UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

VIDAL WHITLEY,

                    Plaintiff,

        -v-                                        9:13-CV-00418

J. MILLER, Lieutenant, Clinton Correctional
Facility, in his individual capacity;
D. VENETTOZZI, Acting Director of DOCCS'
Special Housing/Inmate Disciplinary Program,
in his individual capacity; and
ALBERT PRACK, Director of DOCCS' Special
Housing/Inmate Disciplinary Program, in his
individual capacity,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                              OF COUNSEL:

PRISONERS' LEGAL SERVICES - ALBANY        JAMES M. BOGIN, ESQ.
    OFFICE                                SOPHIA D. HELLER, ESQ.
Attorneys for Plaintiff
41 State Street, M112
Albany, NY 12207

HON. ERIC T. SCHNEIDERMAN                 CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York   Ass't Attorney General
Attorneys for Defendants
The Capitol
Albany, NY 12224


DAVID N. HURD
United States District Judge

<u>**MEMORANDUM–DECISION and ORDER**</u>

## I. <u>INTRODUCTION</u>

Plaintiff Vidal Whitley ("Whitley" or "plaintiff"), an inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), filed this action pursuant to 42 U.S.C. § 1983 against defendants John Miller ("Miller"), Donald Venettozzi ("Venettozzi"), and Albert Prack ("Prack").  Plaintiff alleges Miller, Venettozzi, and Prack (collectively "defendants"), prison officials involved in administering DOCCS' Special Housing/Inmate Disciplinary Program, violated his Fourteenth Amendment right to procedural due process.

Following discovery, the parties cross-moved for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56.  Both motions were opposed, but neither party replied.  The motions were considered on the basis of the submissions without oral argument.

## II. <u>BACKGROUND</u>[1]

At approximately 8:50 p.m. on August 19, 2011, a fight erupted among inmates at Clinton Correctional Facility ("CCF") in an outdoor recreation space known as the "flats area" of the "North Yard."  Pl.'s Statement of Material Facts, ECF No. 16-5, ¶ 2 ("Pl.'s Rule 7.1 Stat."); Defs.' Statement of Material Facts, ECF No. 18-1, ¶ 6 ("Defs.' Rule 7.1 Stat.").

---

[1] Facts cited from Whitley's Statement of Material Facts have been admitted by defendants in corresponding paragraphs of their response to same.  <u>See</u> ECF No. 18-2.  Defendants have also submitted a Statement of Material Facts in support of their cross-motion.  <u>See</u> ECF No. 18-1.  Although plaintiff did not submit a separate response to this statement in technical compliance with Local Rule 7.1(a)(3), an independent review of the submissions reveals that the parties do not dispute the relevant facts in this matter.  In any event, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules."  <u>Holtz v. Rockefeller & Co., Inc.</u>, 258 F.3d 62, 73 (2d Cir. 2001) (citations omitted).  Accordingly, the following facts are undisputed unless otherwise noted.

Although Whitley and a large number of other inmates were in the North Yard when the fight broke out, only twenty inmates participated in the fight and prison officials were eventually able to restore order.[2]  See id.

The next morning, Corrections Sergeant M. Guynup completed an "Inmate Misbehavior Report" alleging Whitley had participated in this fight.  Heller Aff., Ex. 1, ECF No. 16-2, 2.[3]  Specifically, the report alleged plaintiff  was "involved in a [twenty] man altercation in the North Yard on the flats" and was "observed by staff throwing closed fist punches at the head and torso of unknown inmates."  Id.  It further alleged that plaintiff refused to obey orders to stop fighting and lie on the ground.  Id.  The report indicated plaintiff was "identified by [his] photo ID and escorted from the area of the altercation."  Id.  Plaintiff was charged with violating five prison disciplinary rules, including rule 100.13 (fighting); rule 104.11 (violent conduct); rule 104.13 (disturbance); rule 106.10 (direct orders); and rule 105.13 (gang activity).  Id.

On August 24, 2011, prison officials conducted an "Administrative Tier III" disciplinary hearing to adjudicate the charges alleged in the Inmate Misbehavior Report.  Pl.'s Rule 7.1 Stat. ¶¶ 1, 6; Defs.' Rule 7.1 Stat. ¶ 1.  Miller, a Lieutenant at CCF, served as Hearing Officer for the proceeding.  Pl.'s Rule 7.1 Stat. ¶ 7; Defs.' Rule 7.1 Stat. ¶¶ 2, 16.  Whitley pleaded not guilty to each of the charges against him and testified that although he was in the North Yard when the fight began, he was not a participant and immediately complied when prison

---

[2]  A report indicates there were 259 inmates in the North Yard when the fight occurred.  Heller Aff., Ex. 2, ECF No. 16-2.

[3]  This pagination corresponds to that assigned by CM/ECF.

officials ordered everyone in the area to lie on the ground.  Pl.'s Rule 7.1 Stat. ¶¶ 8-9; Defs.'

Rule 7.1 Stat. ¶¶ 7-9, 14-15.

Hearing Officer Miller then reviewed a videotape of the incident.  Pl.'s Rule 7.1

Stat. ¶ 10; Defs.' Rule 7.1 Stat. ¶ 10.  Although Whitley insisted he could identify himself in

the video running away from the fight, Hearing Officer Miller concluded "[a]h, I'm unable to

positively identify [plaintiff] . . . from the video."  Heller Aff., Ex. 2, ECF No. 16-3, 5-6

("Hearing Transcript").  Hearing Officer Miller then called Sergeant Guynup, the author of the

Inmate Misbehavior Report, to testify and explain how he had identified plaintiff as one of the

participants in the fight.  Pl.'s Rule 7.1 Stat. ¶¶ 11-12; Defs.' Rule 7.1 Stat. ¶¶ 16-17.

Sergeant Guynup testified:

> GUYNUP:    From the area of the affected altercation [ ] we
> ascertained from Ground Post 23 over and across to
> Ground Post 21 and back to the section of the fence
> line going towards the rec shack.  Any [ ] inmate that
> was in the direct area had a participation either
> actually fighting or attempting to come into the
> altercation.
>
> . . . .
>
> GUYNUP:    Anybody that was on that ground was positively, was
> handcuffed, positively identified by your ID and then
> escorted out of the [North] Yard of that affected area
> to the gymnasium.  There was a hundred . . .

Hearing Transcript at 6, 9.

Hearing Officer Miller noted that Whitley admitted to being in the flats area during the

fight, and that he did not deny being brought to the gymnasium afterward.  Hearing Transcript

at 9.  However, he also noted that the Inmate Misbehavior Report specifically alleged that

plaintiff "was observed throwing closed fist punches at the head and torso of unknown

inmates" and decided to review the videotape a second time. Hearing Transcript at 6.

During this second viewing, plaintiff continued to insist he was not involved in the fight:

WHITLEY: I'm gonna show where I'm at in [the videotape].

MILLER: You show me where you're at or where you believe you're at . . . . [c]ause as far as I can see all the inmates in that flat area were participating in this incident.

. . . .

MILLER: Now it takes a while everybody's escorted out of the [North Yard]. Now you told me earlier you came running across the [North Yard], right?

WHITLEY: No, I said I was making my rounds around the [ ] work out area back to my, right around where . . . .

MILLER: Well this guy that you claim that you are [ ] didn't come from over here, you didn't come from the weight area. He's out in the middle of the field the whole time.

Hearing Transcript at 6-7.

Even after this second viewing, Hearing Officer Miller concluded he could not identify Whitley in the videotape. Hearing Transcript at 8-9. Plaintiff then inquired directly of Sergeant Guynup as to how he had been identified as one of the inmates actually throwing punches, who explained:

GUYNUP: Not to see it on camera when I was at 1 Post when this eruption took off, we were watching as we moved out to the [North] Yard. Anybody that was in that direct area was throwing punches. The camera pans off a little while looking at other areas. You were in that direct route by 23 Post. It's my estimation that you were involved in that altercation throwing closed fist punches.

Hearing Transcript at 8.

Plaintiff continued to express confusion as to how he was identified:

WHITLEY:    Um, the Sergeant's saying he can't identify me on that camera?

MILLER:    That is correct.

WHITLEY:    So how can he say he identified me through a 259 man altercation?

MILLER:    It wasn't a 259 man altercation.  It was a twenty man altercation.

WHITLEY:    Yeah.

MILLER:    The Sergeant was present in the [North Yard] thirty feet from the altercation.

WHITLEY:    Correct.

MILLER:    Okay and he has positively identified you as being in that area and a participant.

WHITLEY:    But honest, I haven't; I didn't . . .

Hearing Transcript at 10.

Hearing Officer Miller found Whitley guilty of all charges and imposed a penalty of thirty-six months' disciplinary confinement in a Special Housing Unit ("SHU"), loss of package, commissary, and phone privileges, and twelve months' recommended loss of good time credit.  Hearing Transcript at 11; Pl.'s Rule 7.1 Stat. ¶ 23.  Hearing Officer Miller stated that the "[e]vidence relied upon" in making his determination was "[t]he written report charging inmate with being involved in a twenty man altercation in the North Yard . . . . [t]estimony from report writer [Guynup] positively identifying inmate as a participant . . . . [and] review of confidential memorandum indicating this incident was related to gang activities."  Hearing Transcript at 11; Heller Aff., Ex. 1, ECF No. 16-2, 11 (written disposition of charges indicating same).

- 6 -

On August 24, 2011, Whitley administratively appealed this sentence.  Heller Aff., Ex. 3, ECF No. 16-4, 2-3; Pl.'s Rule 7.1 Stat. ¶ 24.  Venettozzi, then the Acting Director of DOCCS' Office of Special Housing and Inmate Discipline, "modified" plaintiff's penalty on October 28, 2011, reducing plaintiff's confinement in SHU to eighteen months because "[t]he nature of offense, however serious, does not warrant the penalty imposed."  Heller Aff., Ex. 4, ECF No. 16-4, 5-6; Pl.'s Rule 7.1 Stat. ¶ 25.

On February 10, 2012, Whitley, acting through counsel, submitted a request for reconsideration of the modified penalty to Prack, the new Director of DOCCS' Office of Special Housing and Inmate Discipline.  Heller Aff., Ex. 5, ECF No. 16-4, 8-11; Pl.'s Rule 7.1 Stat. ¶ 26.  During the pendency of this request, plaintiff also challenged the hearing through an Article 78 proceeding in state court.  Pl.'s Rule 7.1 Stat. ¶ 27.  Director Prack denied plaintiff's request on March 16, 2012, finding there were not "sufficient grounds to reconsider the previous decision on that hearing."  Heller Aff., Ex. 5, ECF No. 16-4, 12; Pl.'s Rule 7.1 Stat. ¶ 28.

However, on November 9, 2012, while the Article 78 proceeding was still pending, Whitley's sentence was administratively reversed "pursuant to a conversation with the attorney general's office."  Heller Aff., Ex. 6, ECF No. 16-4, 14-17; Pl.'s Rule 7.1 Stat. ¶ 29.  Plaintiff was released from SHU on November 19, 2012, having served a total of 458 days in special confinement.  Pl.'s Rule 7.1 Stat. ¶¶ 30-31.

## III.  DISCUSSION

### A.  Motion for Summary Judgment—Legal Standard

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of N.Y., 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4. The failure to meet this burden warrants denial of the motion. See id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the non-moving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citations omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Due Process

Whitley's sole claim, brought pursuant to 42 U.S.C. § 1983, is that defendants violated his right to procedural due process in connection with the disciplinary hearing. See Pl.'s Mem. Supp. Summ. J., ECF No. 16-8, 6 ("Pl.'s Mem."). Defendants respond that the

disciplinary hearing satisfied the demands of due process; alternatively, they raise the shield of qualified immunity.  Defs.' Mem. Supp. Summ. J., ECF No. 18-4, 3, 10 ("Defs.' Mem.").

Section 1983 requires a plaintiff to "show that the conduct in question deprived him of a right, privilege, or immunity secured by the Constitution or the laws of the United States, and that the acts were attributable at least in part to a person acting under color of state law."  Reed v. Medford Fire Dep't, Inc., 806 F. Supp. 2d 594, 609 (E.D.N.Y. 2011) (citations omitted).  "It is well-settled that Section 1983 itself 'creates no substantive rights' but rather 'provides only a procedure for redress for the deprivation of rights established elsewhere.'"  Id. (quoting Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993)).

Whitley identifies his Fourteenth Amendment right to procedural due process and challenges the adequacy of the procedures employed at the prison disciplinary hearing where he was found guilty of the charges alleged in the Inmate Misbehavior Report.  Pl.'s Mem. 6-12.  Plaintiff contends Hearing Officer Miller's guilty determination, delivered orally at the hearing and memorialized in writing the same day, was unsupported by any reliable evidence of plaintiff's guilt.  Id. at 12.

The Fourteenth Amendment to the Constitution provides, in relevant part, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "Prisoners retain rights under the Due Process Clause of the Fourteenth Amendment, but those rights are somewhat muted by the institutional concerns inherent in a correctional system."  Zavaro v. Coughlin, 970 F.2d 1148, 1152 (2d Cir. 1992).  Nevertheless, it has long been clear that prison inmates are still "entitled to certain procedural protections when disciplinary actions subject them to further liberty deprivations such as loss of good-time credit or special confinement," Sira v. Morton, 380 F.3d 57, 69 (2d

Cir. 2004) (citation omitted), provided that those liberty deprivations amount to "an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Luna v. Pico, 356 F.3d 481, 487 n. 3 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

Here, Whitley spent 458 days in SHU confinement before the hearing determination was administratively expunged. Defendants do not attempt to argue plaintiff's confinement was not an "atypical and significant hardship." See, e.g., Colon v. Howard, 215 F.3d 227, 231 (2d Cir. 2000) ("Confinement in normal SHU conditions for 305 days is in our judgment a sufficient departure from the ordinary incidents of prison life to require procedural due process protections . . . ."); Molano v. Bezio, –F. Supp. 2d–, 2012 WL 1252630, at *2 (W.D.N.Y. Apr. 13, 2012) (noting twelve months' confinement in SHU is a "sufficient" deprivation to trigger due process protection). Plaintiff's 458-day tenure in SHU and corresponding loss of privileges easily crosses the "atypical and significant hardship" threshold. Accordingly, it triggers the procedural safeguards required by due process.

These procedural safeguards include "advance written notices of the charges . . . ; a hearing affording a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." Sira, 380 F.3d at 69 (quoting Wolff v. McDonnell, 418 U.S. 539, 563-67 (1974)). "Since Wolff, the Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by 'some evidence.'" Id. at 69 (quoting Superintendent v. Hill, 472 U.S. 445, 455 (1985)).

For example, in Superintendent v. Hill, two inmates were charged with assaulting another inmate and were convicted at a disciplinary hearing in which a prison guard testified

he had not personally observed the assault.  472 U.S. at 447.  Rather, the prison guard had

merely heard a commotion and, upon investigating, discovered an injured victim and

observed three inmates fleeing together down an enclosed walkway with no other individuals

in the area.  Id. at 447-48.  The Hill Court found that although this evidence was "meager,"

the determination was not "without support or otherwise arbitrary."  Id. at 457.

Indeed, "[a]scertaining whether [the 'some evidence'] standard is satisfied does not

require examination of the entire record, independent assessment of the credibility of

witnesses, or weighing of the evidence."  Hill, 472 U.S. at 455 (citations omitted).  However,

as the Second Circuit has since explained, "implicit in the 'some evidence' requirement[ ] is

the mandate that the evidence be 'reliable.'"  Molano, 2012 WL 1252630, at *4; see also

Luna, 356 F.3d at 488 (collecting cases).

For example, in Zavaro v. Coughlin, a prisoner faced disciplinary charges in

connection with a mess hall riot involving approximately one hundred inmates.  See 970 F.2d

at 1150.  The prisoner insisted he had entered the mess hall to eat and, when the riot

erupted, had remained seated in his chair until he was ordered to lie on the floor.  Id.

However, the hearing officer determined the prisoner was guilty based on his admitted

presence in the mess hall during the riot, testimony from several prison officers indicating

"every inmate in the mess[ ]hall" was involved, and the fact the prisoner had been identified

by his ID card after the riot was brought under control.  Id. at 1150-51.

The Second Circuit held that the testimony of the prison guards who quelled the riot

"did nothing more than place [the prisoner] in the mess hall at the time of a riot with

widespread participation . . . . [and] offered nothing to point to [him] as a participant, or to call

into question his assertion that he remained at his table . . . until ordered to lie down on the

floor." 970 F.2d at 1153. Although the <u>Zavaro</u> Court opined that perhaps such all-inclusive statements regarding a particular inmate's guilt might suffice if the number of inmates were "far fewer and the enclosed area far smaller," the Court ultimately concluded "such all-inclusive statements about the conduct of one hundred or so inmates in a mess hall . . . are so blatantly implausible when taken literally that they do not constitute even 'some evidence' of a particular inmate's guilt." 970 F.2d at 1152-53.

### 1. Hearing Officer Miller

Whitley contends that the facts of his case cannot be meaningfully distinguished from those in <u>Zavaro</u>. First, plaintiff argues the Inmate Misbehavior Report authored by Sergeant Guynup, which alleged plaintiff was "observed by staff throwing closed fist punches," stands in direct contrast to Sergeant Guynup's later testimony that it was only his "estimation" plaintiff was involved in the fight. Pl.'s Mem. 9-10. Second, plaintiff argues the process used to identify inmates involved in the fight—rounding up everyone in the area where the fight took place and then later identifying them by their ID cards—amounts to "little more than guilt by association" of a kind specifically condemned by the <u>Zavaro</u> Court. <u>Id</u>. at 10.

Defendants completely ignore Whitley's analogy to <u>Zavaro</u>. Instead, they contend plaintiff received all the process he was due because Hearing Officer Miller "relied on live testimony and a videotape of the incident to find plaintiff guilty of the five charges." Defs.' Mem. 9. Specifically, defendants argue Sergeant Guynup's testimony was sufficient to identify plaintiff as a participant in the fight and that Hearing Officer Miller also "relied on the videotape in part" in determining plaintiff's guilt. <u>Id</u>. Defendants argue that the evidence adduced at the hearing forced Hearing Officer Miller to make a credibility determination

between the conflicting testimony of plaintiff and Sergeant Guynup, and such determinations are accorded particular deference in this context. Id. at 7-8.

A review of the hearing transcript, the parties' submissions, and Hearing Officer Miller's written disposition reveals that the evidence upon which Whitley was found guilty at the disciplinary hearing—in particular the Inmate Misbehavior Report and Sergeant Guynup's testimony—is insufficient to satisfy even the relatively lax "some reliable evidence" standard.[4]

Sergeant Guynup, the author of the Inmate Misbehavior Report, was presumably among the "staff" who "observed" Whitley throwing punches.[5] However, his testimony at the hearing in support of those allegations was, as he himself indicated, based only on an approximation. Sergeant Guynup testified that "any inmate that was in the direct area had a participation either actually fighting or attempting to come into the altercation." Hearing Transcript at 6 (emphasis added). And when pressed, Sergeant Guynup conceded it was only his "estimation" that plaintiff was involved in the fight. Id. at 8 (emphasis added).

These all-inclusive statements—that "any" inmate in the flats area was fighting and, since plaintiff was found in the area, it was Sergeant Guynup's "estimation" plaintiff was therefore involved—have already been squarely rejected by the Second Circuit in Zavaro. See 970 F.2d at 1154 ("[T]he evidence simply placed [the prisoner] at the location of a riot. Only an anxiousness to cast an all-encompassing disciplinary net, and a corresponding

---

[4] Defendants concede that the third piece of evidence relied upon by Hearing Officer Miller—a confidential memorandum detailing gang activity—does not identify Whitley "at all." See Defs.' Resp. to Pl.'s Disc. Req., ECF No. 16-7, 1.

[5] "The misbehavior report shall be made by the employee who has observed the incident or who has ascertained the facts of the incident." 7 N.Y.C.R.R. § 251-3.1(b).

disregard for the guilt or innocence of particular inmates, could explain the disciplining of [the prisoner] for his [mere] presence in the mess hall.").

Nor does the Inmate Misbehavior Report, in the absence of any other supporting testimony and after its author failed to corroborate its allegations, suffice as "reliable" evidence of plaintiff's guilt.[6]  Johnson v. Goord, 487 F. Supp. 2d 377, 382 (S.D.N.Y. 2007) (noting that "reliability as used in the Second Circuit looks to the trustworthiness of evidence, particularly . . . hearsay evidence."  (emphasis omitted)); cf. Kotler v. Daby, No. 9:10-CV-136 (MAD/CFH), 2013 WL 1294282, at *9 (Mar. 28, 2013) (D'Agostino, J.) (adopting in part and rejecting in part Report-Recommendation of Hummel, M.J.) (finding "some evidence" standard satisfied where, inter alia, the written misbehavior report and subsequent testimony of report's author at administrative hearing was consistent), appeal dismissed, 13-1764 (2d Cir. May 7, 2013); Molano, 2012 WL 1252630, at *4 (finding due process violation where "[n]o one who testified at the hearing had personally observed the attack" alleged in the misbehavior report); Creech v. Schoellkoph, 688 F. Supp. 2d 205, 214-15 (W.D.N.Y. 2010) (finding misbehavior report sufficient to satisfy the "some reliable evidence" standard where it was made by an officer personally involved in the incident and included a detailed account of the incident, including time, place, circumstances, and specific names of participants).

Further, defendants' contention that Hearing Officer Miller "relied on the videotape in part" in making his determination is simply incorrect.  Hearing Officer Miller did not cite the

---

[6]  The Inmate Misbehavior Report is also signed by "J. Gordon CO" and "W. Leclair CO" under the "endorsements of other employee witnesses (if any)" portion of the form.  See Heller Aff., Ex. 1, ECF No. 16-2, 2; see also 7 N.Y.C.R.R. § 251-3.1(b) ("Where more than one employee has personal knowledge of the facts, each employee shall make a separate report or, where appropriate, each employee shall endorse his/her name on a report made by one of the employees.").  However, neither of these prison officials appeared, testified, submitted a report, or otherwise participated in the disciplinary hearing.

videotape as among the "evidence relied upon" in making his determination, and for good reason:  the video, rendered in grayscale, depicts a bird's-eye view of a brief altercation involving a number of inmates, some of whom appear to be involved in the fight and others who appear to be simply walking toward the commotion from a distance.  As Hearing Officer Miller made abundantly clear on the record, "by that video I can't tell who you are.  [Y]ou can't tell who you are . . . . [t]hat, that; you could be any number of inmates.  That video is very poor quality.  I can not positively identify that that's you in that video, nor can you."  Hearing Transcript at 9.

Defendants maintain that Hearing Officer Miller stated Sergeant Guynup "has positively identified [plaintiff] as being in that area and a participant" and suggest that he was entitled to rely on this mis-characterization of Sergeant Guynup's testimony in making his guilty determination.  Defs.' Mem. 8.  But to accept such logic—that Hearing Officer Miller could vitiate the constitutional violation merely by making such a statement on the record despite the complete absence of any evidentiary support at all—would render the procedural safeguards required by due process essentially meaningless.

"Due process does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion.  Indeed, this obligation pertains even when the conclusion is that of an eyewitness or person of general reliability."  Sira, 380 F.3d at 80 (citations and explanatory parenthetical omitted)).  Because his determination was not based on "some reliable evidence," Hearing Officer Miller violated plaintiff's Fourteenth Amendment right to procedural due process.  Accordingly, plaintiff's motion for summary judgment with respect to Miller will be granted.

## 2. __Personal Involvement__

Although both are named defendants in this action, neither party devotes any space in their motion papers to addressing Acting Director Venettozzi or Director Prack's personal involvement in the due process violation.  Rather, defendants merely conclude that since Hearing Officer Miller's initial "hearing decision rested on 'some reliable evidence,'" Whitley fails to even state a claim against either Venettozzi or Prack.  Defs.' Mem. at 9.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (internal quotation marks omitted)).  "[W]hile personal involvement cannot be founded solely on supervision, liability can be found if the official proactively participated in reviewing the administrative appeals as opposed to merely rubber-stamping the results."  Molano, 2012 WL 1252630, at *5 (quoting Collins v. Ferguson, 804 F. Supp. 2d 134, 140 (W.D.N.Y. 2011)); see also Smith v. Perlman, No. 9:11-CV-00020 (MAD/CFH), 2014 WL 991854, at *10 (N.D.N.Y. Mar. 13, 2014) (D'Agostino, J.) ("[I]t is well-established that the review, denial or affirmance of a denial of a grievance is insufficient to establish personal involvement." (quoting Perilla v. Fischer, 2013 WL 5798557, at *7 (W.D.N.Y. Oct. 28, 2013)).

Here, Whitley administratively appealed Hearing Officer Miller's determination to Acting Director Venettozzi, claiming generally that Sergeant Guynup had failed to identify him at the disciplinary hearing.  See Heller Aff., Ex. 3, ECF No. 16-4, 2-3.  Acting Director Venettozzi "modified" the penalty imposed by Hearing Officer Miller because "the nature of [the] offense, however serious, does not warrant the penalty imposed."  Heller Aff., Ex. 4, ECF No. 16-4, 5-6.  However, Acting Director Venettozzi otherwise affirmed Hearing Officer

Miller's determination in a typewritten response indicating that it had been "electronically produced upon the authority of the director of special housing/inmate discipline program." <u>Id.</u> at 5.

Whitley, acting through counsel, then filed a second administrative appeal to Director Prack, outlining the deficiencies in Hearing Officer Miller's decision with extensive reference to various provisions of New York state law. <u>See</u> Heller Aff., Ex. 5, ECF No. 16-4, 8-11. Director Prack denied review in a typewritten form response to plaintiff's counsel which stated that there were not "sufficient grounds to reconsider the previous decision on that hearing" and that "[n]o further administrative action will be taken." <u>Id.</u> at 12.

These two form responses do not constitute sufficient evidence that either defendant proactively participated in reviewing the merits of Whitley's claim or had otherwise "actively considered the issues raised by [plaintiff] in reviewing and responding to [his] appeal[s]" to give rise to a question of fact regarding either individual's personal involvement. <u>Friedland v. Otero</u>, No. 3:11-CV-606 (JBA), 2014 WL 1247992, at *10 (D. Conn. Mar. 25, 2014). If anything, this evidence suggests that plaintiff's appeals merely put defendants on notice of a potential state law violation, since New York law requires prison disciplinary rulings to be supported by "sufficiently relevant and probative" information "to constitute substantial evidence," a burden of proof which is distinct from, and higher than, the "some reliable evidence" standard required to establish a federal due process claim. <u>Johnson</u>, 487 F. Supp. 2d at 382 n.1 (quoting <u>Foster v. Coughlin</u>, 565 N.E. 2d 477, 478 (1990)). Accordingly,

defendant's motion for summary judgment as to Acting Director Venettozzi and Director Prack will be granted.[7]

### 3. Qualified Immunity

Defendants concede Whitley's "right to due process at a prison disciplinary hearing is well-established," but contend Hearing Officer Miller "acted reasonably" in determining plaintiff's guilt.  Defs.' Mem. 11.  Plaintiff argues defendants "acted unreasonably and demonstrated their disregard for [his] guilt or innocence by assuming [he] was fighting only because he was in a particular area when officers ordered everyone to the ground.  Pl.'s Resp. in Opp'n, ECF No. 21, 7.

"Even if a disciplinary disposition is not supported by 'some evidence,' state officials are entitled to qualified immunity from civil liability for actions performed in the course of their duties insofar as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Woodard v. Shanley, 505 F. App'x 55, 57 (2d Cir. 2012) (summary order) (quoting Luna, 356 F.3d at 490).  "For a right to be clearly established, it 'must have been recognized in a particularized rather than a general sense.'"  Farid v. Ellen, 593 F.3d 233, 244 (2d Cir. 2010) (quoting Moore v. Andreno, 505 F.3d 203, 214 (2d Cir. 2007)).

"[N]either this circuit nor the Supreme Court has clearly defined standards for determining what constitutes 'some evidence' in the context of prison disciplinary hearings; rather, decisions have addressed the problem piecemeal, focusing on the discrete problems

---

[7]  Post-Iqbal, courts in this Circuit are divided on what showing must be made to establish "personal involvement" of a prison supervisory official in these circumstances.  See, e.g., Molano, 2012 WL 1252630, at *5 (noting the split in case law and collecting cases).  However, given the dearth of evidentiary support on this point, the terse administrative responses to each of plaintiff's appeals, standing alone, are insufficient under any measure.

raised by the facts of particular cases." Woodard, 505 F. App'x at 57 (quoting Sira, 380 F.3d at 81). However, since Zavaro was decided in 1992, it has been "clearly established" that a prison inmate's right to a disciplinary disposition based on "some reliable evidence" is violated where the only evidence adduced is a series of sweeping generalizations about the conduct of all the inmates in a particular area. 970 F.2d at 1152 (holding qualified immunity doctrine does not protect hearing officer "where there was no reliable evidence whatsoever of the inmate's guilt").

Here, Sergeant Guynup's testimony regarding Whitley's involvement in the fight was little more than speculation.[8]  As in Zavaro, the post hoc identification of plaintiff by his ID card did nothing more than place him near the fight in the North Yard.  And as Hearing Officer Miller indicated on the record, plaintiff could not be identified in the videotape.  Nevertheless, this "evidence" was sufficient to subject plaintiff to discipline.

Procedural due process, even in the context of a prison disciplinary proceeding, demands more.  While there were less inmates involved in the fight at issue here than the riot at issue in Zavaro, the facts of these two cases are sufficiently analogous to conclude Hearing Officer Miller could not have objectively and reasonably believed his determination, based only on Sergeant Guynup's speculation and in the absence of any reliable evidence, was constitutional.  Accordingly, qualified immunity will be denied.

## IV.  CONCLUSION

The undisputed evidence demonstrates that Hearing Officer Miller violated Whitley's Fourteenth Amendment right to procedural due process.  However, plaintiff has failed to

---

[8] As noted above, the other signatories to the report did not participate in the hearing in any manner.

identify a basis in the record to support a finding that either Acting Director Venettozzi or Director Prack were "personally involved" in the violation and therefore they cannot be held liable under § 1983.  Finally, given the factual similarity to <u>Zavaro</u>, and that Court's clear admonition that all-inclusive statements of guilt are insufficient in the absence of other evidence, qualified immunity will be denied.

Therefore, it is

ORDERED that

1.  Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part;

2.  Defendants' cross-motion for summary judgment is GRANTED in part and DENIED in part;

3.  Plaintiff's motion for summary judgment with respect to his claim against Miller is GRANTED;

4.  Plaintiff's motion for summary judgment with respect to his claims against Venettozzi and Prack is DENIED;

5.  Defendant's cross-motion for summary judgment with respect to plaintiff's claim against Miller is DENIED; and

6.  Defendant's cross-motion for summary judgment with respect to plaintiff's claims against Venettozzi and Prack is GRANTED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: November 6, 2014.
            Utica, New York.